IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Melvin Bonnell, | ) | |
| | ) | CASE NO. 1:21 CV 1604 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | JUDGE JEFFREY J. HELMICK |
| Chris McBee, Warden, | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Respondent. | ) | **AND ORDER** |
| | ) | |

Before me is Respondent Warden Chris McBee's motion to transfer to the Sixth Circuit Court of Appeals Petitioner Melvin Bonnell's third petition for writ of habeas corpus pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254 (Doc. 1). (Doc. 6.) Respondent seeks the transfer for a determination of whether Bonnell's petition is barred as "second or successive" under 28 U.S.C. § 2244(b). Bonnell opposes the motion. (Doc. 8.) For the following reasons, Respondent's motion to transfer is granted.[1]

### RELEVANT BACKGROUND

Bonnell was convicted in an Ohio state court and sentenced to death in 1988 for the aggravated murder of Eugene Bunner. *See State v. Bonnell*, 61 Ohio St. 3d 179, 180 (Ohio 1991). Ohio courts affirmed his convictions and sentences on direct appeal and post-conviction review. *See id.* at 181 (direct appeal); *State v. Bonnell*, 71 Ohio St. 3d 1459 (Ohio 1994) (application to reopen direct appeal); *State v. Bonnell*, 84 Ohio St. 3d 1469 (Ohio 1999) (post-conviction review).

---

[1] Bonnell filed a motion for leave to conduct discovery (Doc. 9) at the same time as his brief opposing Respondent's motion to transfer. Because the Court grants Respondent's motion to transfer, Bonnell's discovery request is denied as moot.

Bonnell first sought federal habeas corpus relief in this Court in 2000, raising twenty claims. *See Bonnell v. Mitchell*, 301 F. Supp. 2d 698, 718-20 (N.D. Ohio 2004). He asserted, among other things, several claims of prosecutorial misconduct. In one of those claims, he alleged that the State improperly failed to preserve potentially exculpatory evidence from the crime scene, including blood droppings, vomit, and fingerprints, and from Bonnell's hands, car, and pants under *Arizona v. Youngblood*, 488 U.S. 51 (1988). *See Bonnell v. Mitchel[l]*, 301 F. Supp. 2d 698, 729-30 (N.D. Ohio 2004) (Katz, J.). In *Youngblood*, the Supreme Court held that the failure to preserve potentially material, exculpatory information violates constitutional due process where that failure resulted from bad faith. *Youngblood*, 488 U.S. at 57-58.

Another judge in this Court denied Bonnell's petition on February 4, 2004. *Id.* at 703. The Sixth Circuit affirmed that decision on January 8, 2007. *Bonnell v. Mitchell*, 212 Fed. Appx. 517 (6th Cir. 2007). The Supreme Court declined review of the case on December 3, 2007. *Bonnell v. Ishee*, 552 U.S. 1064 (2007).

Bonnell filed a second habeas petition before a different judge in this Court on April 12, 2017. (Case No. 1:17 cv 787, Doc. 1.) In his petition, he asserted two claims: (1) that Ohio's statutory death-penalty scheme was unconstitutional under a recent Supreme Court decision that held that Florida's capital sentencing scheme was unconstitutional because "[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death"; and (2) that his federal equal protection and due process rights were violated when the state trial court failed to render a final appealable order. (Case No. 1:17 cv 787, Doc. 1.) The respondent filed a motion to transfer the petition to the Sixth Circuit for a determination of whether the petition was barred as a "second or successive" petition under AEDPA's § 2244(b). (Case No. 1:17 cv 787, Doc. 5.) The Court granted the motion (Case No. 1:17 cv 787, Doc. 16 (Lioi, J.)), and the Sixth Circuit ultimately found the petition barred (*see* Case No. 1:17 cv 787, Doc. 17).

Now, Bonnell has filed a third habeas petition attacking his 1988 state-court judgment. (Doc. 1.) In it, he asserts yet another claim under *Youngblood*, alleging that his due process rights were violated when the police or prosecutors, or both, acting in bad faith, lost or destroyed nearly all of the physical evidence in his case, "[s]ome of [which] held apparent exculpatory value, and the rest [of which] held at least potential exculpatory value, at the time of its loss and/or destruction." (*Id.* at 23.)[2]

According to Bonnell, he has sought access to the State's trial exhibits and other physical evidence in his case in various state post-conviction proceedings since 1995, whether to support *Brady* claims alleging the State's suppression of exculpatory evidence, *Youngblood* claims alleging the State's failure to preserve evidence, or requests for DNA testing. (*Id.* at 11-22.)[3] But the State consistently has represented to Bonnell's counsel and the courts that the physical evidence in the case was not preserved, with one exception: his jacket was located in 2008. (*Id.* at 11-15.)

Then, in February 2020, while working on the appeal to the Ohio Supreme Court of the appellate court's decision affirming the trial court's denial of a post-conviction petition, Bonnell's state post-conviction counsel discovered in the prosecutor's file trial exhibits consisting of bullets from the victim's body and shell casings. (*Id.* at 17-20.) Nevertheless, in March 2020, in its memorandum in opposition to jurisdiction filed in the Ohio Supreme Court, the State again represented that all physical evidence in the case except the jacket was lost or destroyed. (*Id.* at 20-21.) In response, Bonnell's counsel filed several motions in Ohio's high court alleging prosecutorial

---

[2] All references to page numbers of documents in the Court's electronic court filing system ("ECF") are to the page numbers assigned by ECF, not to the original documents' page numbers or ECF "PageID" numbers.

[3] S*ee also State v. Bonnell*, 2019 WL 7190796, at *2-5 (Ohio Ct. App. Dec. 26, 2019) (recounting procedural history of Bonnell's litigation relating to missing evidence).

3

misconduct given their recent discovery of the morgue bullets and shell casings. (*Id.* at 21-22.) The State replied to the motions by acknowledging the recently discovered evidence, but arguing the evidence was irrelevant to the issues Bonnell raised in his post-conviction appeal. (*Id.* at 21.) The court denied review of Bonnell's allegations of misconduct. (*Id.* at 22.)

Bonnell then filed this third-in-time habeas petition on August 17, 2021, raising a new, broader *Youngblood* claim encompassing all of the physical evidence in the case now lost or destroyed and supported by his discovery of the bullets and casings in the prosecution files. (Doc. 1 at 23-36.) And on April 22, 2022, Respondent filed the motion now before the Court, requesting that Bonnell's petition be transferred to the Sixth Circuit as a "second or successive" petition requiring authorization under 28 U.S.C. § 2244(b)(3). (Doc. 6.) Bonnell counters that his new petition is not successive under § 2244(b) because his new *Youngblood* claim only became ripe when his counsel discovered the bullets and casings and could prove the State's bad faith. (*Id.* at 2.)

## ANALYSIS

### A. "Second or Successive" Habeas Petitions under AEDPA

Under the gatekeeping provisions of AEPDA's § 2244(b), claims presented in a "second or successive" habeas petition that a petitioner previously presented in a federal habeas petition must be dismissed. 28 U.S.C. § 2244(b)(1). Claims in a "second or successive" petition that a petitioner did not previously raise also are subject to dismissal, unless the petitioner can make a *prima facie* showing that they rely either on a new and retroactive rule of constitutional law, or on new facts that could not have been discovered previously through the exercise of due diligence *and* show a high probability of actual innocence. 28 U.S.C. § 2244(b)(2), (b)(3)(C); *Magwood v. Patterson*, 561 U.S. 320, 330 (2010).

AEDPA requires state prisoners to obtain authorization from the appropriate federal court of appeals before filing a "second or successive" habeas petition in federal district court. 28 U.S.C. §

4

2244(b)(3). Without such authorization, the district court lacks jurisdiction to review the petition. 28 U.S.C. § 2244(b)(3)(A).

The Supreme Court has made clear, however, that not every second or later-filed petition is "second or successive" for purposes of § 2244(b). *See, e.g., Magwood*, 561 U.S. at 335 n.11. District courts have jurisdiction, therefore, to make a preliminary determination as to whether a petition filed after an initial or earlier petition is "second or successive," and therefore subject to § 2244(b)'s gatekeeping requirements, or non-successive, in which case the court may consider it without the circuit court's authorization. *In re Smith*, 690 F.3d 809, 809-10 (6th Cir. 2012) (holding that a district court has jurisdiction to determine "in the first instance" whether a habeas petitioner's second petition is "second or successive" within the meaning of § 2244(b)).

The term "second or successive" is not defined in § 2244(b). Instead, the Supreme Court considers the phrase a "term of art given substance" by the Court's habeas cases. *Slack v. McDaniel*, 529 U.S. 473, 486 (2000). For instance, the Court "has confirmed that a numerically second petition is not properly termed 'second or successive' to the extent it asserts claims whose predicates arose after the filing of the original petition." *In re Jones*, 652 F.3d 603, 605 (6th Cir. 2010). In *Stewart v. Martinez-Villareal* 523 U.S. 637, 644 (1998), and later in *Panetti v. Quarterman*, 551 U.S. 930, 945 (2007), the Court held that the statutory bar on "second or successive" applications does not apply to claims raised under *Ford v. Wainwright*, 477 U.S. 399 (1986), prohibiting the execution of insane prisoners, where the petition was filed after the state obtained an execution warrant. *Martinez-Villareal*, 523 U.S. at 640 (as to an identical, previously filed *Ford* claim); *Panetti*, 551 U.S. at 947 (as to a *Ford* claim that had not been presented in an earlier petition). This exception is based on the ripeness doctrine, permitting a petitioner to file what is functionally a first petition as to a previously unripe claim that becomes ripe only when execution is imminent, as an individual's competency to be executed cannot properly be assessed until that time. *See Martinez-Villareal*, 523 U.S. at 645

("Respondent brought his claim in a timely fashion, and it has not been ripe for resolution until now."); *Panetti*, 551 U.S. at 945 ("We conclude, in accord with this precedent, that Congress did not intend the provisions of AEDPA addressing 'second or successive' petitions to govern a filing in the unusual posture presented here: a § 2254 application raising a *Ford*-based incompetency claim filed as soon as that claim is ripe.").

### B. Bonnell's Third Petition

Bonnell relies on *Panetti* and *Martinez-Villareal*'s ripeness theory here in arguing that his third-in-time habeas petition is not successive and therefore not subject to § 2244(b)'s gatekeeping requirements. He contends, without supporting authority, that the claim he now asserts relies on evidence of the prosecutor's bad faith, and "[b]ad faith is an element that is *not* ripe at the time of trial but is accumulated over a significant period of time as reflected in [the] unique procedural history" of this case. (Doc. 8 at 4-5.) Bonnell maintains that this claim ripened when his post-conviction counsel discovered in 2020 the morgue pellets and shell casings in the prosecutor's file, which the prosecutors had repeatedly claimed over many years were lost or destroyed. (*Id.* at 7.) Respondent counters that Bonnell's new petition "on its face is successive" and therefore must be transferred to the Sixth Circuit for authorization. (Doc. 6 at 3.) I agree.

Courts have applied the *Panetti* / *Martinez-Villareal* ripeness exception to the statutory bar on successive petitions outside the context of *Ford* claims. In *In re Jones*, 652 F.3d 603, 605 (6th Cir. 2010), for example, the Sixth Circuit found an *ex post facto* claim asserted in a later habeas petition non-successive, because it challenged the cumulative effect of amendments to Michigan's parole system, the last of which took effect two years after the petitioner filed his original habeas petition. The court explained that "[l]ike the *Ford* claims at issue in *Panetti* and *Martinez–Villareal*, Jones's *ex post facto* claim was unripe when his initial petition was filed – the events giving rise to the claim had not yet occurred." *Id. See also Garcia v. Quarterman*, 573 F.3d 214, 221 (5th Cir. 2009) ("[L]ater

habeas petitions attacking distinct judgments, administration of an inmate's sentence, defective habeas proceeding itself, or some other species of legal error – when the error arises after the underlying conviction – tend to be deemed non-successive.") (citing cases)).

But the Supreme Court explicitly has refused to apply the *Panetti / Martinez-Villareal* exception to later petitions asserting claims based on newly discovered facts – even where the facts were previously unavailable to the petitioner. In *Magwood v. Patterson, supra*, the Court rejected an interpretation of § 2244(b)(2)(B) in which the second-or-successive rule would "*not* apply to a claim that the petitioner did *not* have a full and fair opportunity to raise previously." *Magwood*, 561 U.S. at 335 (emphasis in original). It reasoned that if a petitioner's claim falls directly within the scenario described in § 2244(b)(2)(B) to allow the petitioner to bypass the authorization procedure "would considerably undermine – if not render superfluous – the exceptions to dismissal set forth in § 2244(b)(2)." *Id.; see also In re Coley*, 871 F.3d 455, 457-58 (6th Cir. 2017) (rejecting similar argument in interpreting § 2244(b)(2)(A)). In other words, because § 2244(b)(2)(B) permits circuit courts to authorize claims presented in "second or successive" petitions that are predicated on newly discovered evidence to proceed in some circumstances, the provision clearly contemplates that such claims, while previously unavailable to the petitioner, are nonetheless successive.

Here, Bonnell's petition presents the exact scenario described in § 2244(b)(2)(B). It attacks the same state-court judgment as his previous two petitions. It asserts a claim he did not raise in his prior petitions; Bonnell concedes his new *Youngblood* claim, which concerns all of the State's physical evidence in the case, is "similar, but not identical" to the one he raised in his original petition, which focused only on evidence from the crime scene and his hands, clothes and possessions at the time of his arrest. (Doc. 1 at 2.) And the new *Youngblood* claim is predicated on newly discovered and previously unavailable facts – namely, that the morgue bullets and shell casings were in the State's possession despite its repeated representations to the contrary.

7

Furthermore, this claim was not unripe when Bonnell filed his original habeas petition. By his own account, Bonnell has long been aware that physical evidence in his case was missing, and for more than two decades he has challenged the State's handling of the evidence in both state and federal courts, including in his initial petition. The fact that Bonnell only now has found this additional, previously unavailable evidence of the State's bad faith – which he contends strengthens and broadens his new *Youngblood* claim – does not relieve him of § 2244(b)(2)(B)'s gatekeeping procedures; rather, it plants his petition squarely within the provision's reach. *See In re Wogenstahl*, 902 F.3d 621, 627-28 (6th Cir. 2018) (finding second-in-time petition "second or successive" under § 2244(b)(2)(B) where the factual predicates of his *Brady* and ineffective-assistance claims "had already occurred when he filed his petition, although Wogenstahl was unaware of these facts.").

Accordingly, Bonnell's third-in-time petition is "second or successive" under AEDPA's § 2244(b)(2)(B) and must be transferred to the Sixth Circuit for authorization pursuant to the Act's § 2244(b)(3)(A).

## Conclusion

For the reasons stated above, the Court finds Petitioner Bonnell's petition for writ of habeas corpus (Doc. 1) is "second or successive" within the meaning of 28 U.S.C. § 2244(b), and therefore grants Respondent's motion to transfer the petition to the Sixth Circuit Court of Appeals for a determination of whether the case may proceed (Doc. 6). It hereby orders the Clerk to transfer the case to the Sixth Circuit pursuant to 28 U.S.C. § 1631 for such authorization.

IT IS SO ORDERED.

Dated: March 21, 2023          *s/ Jeffrey J. Helmick*
                               JEFFREY J. HELMICK
                               UNITED STATES DISTRICT JUDGE